No. 16-55072

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

RENATE MORALES,
an individual, and on behalf of the putative class,

Plaintiff-Appellant,

vs.

PROVIDENCE HEALTH SYSTEM - SOUTHERN CALIFORNIA,
erroneously sued as Providence Health and Services, Inc.,

Defendant-Appellee

---

On Appeal from the United States District Court
for the Central District of California
Case No. 2:15-cv-04516-JAK-PLA
Honorable John A. Kronstadt

---

## ANSWERING BRIEF OF DEFENDANT-APPELLEE

---

JOHN R. TATE (SB#73836)
  johntate@dwt.com
KATHLEEN L. DRUMMY (SB#76281)
  kathydrummy@dwt.com
CAMILO ECHAVARRIA (SB#192481)
  camiloechavarria@dwt.com
SEAN M. SULLIVAN (SB#229104)
  seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel:  (213) 633-6800
Fax: (213) 633-6899

JOHN D. FREED (SB#261518)
  jakefreed@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Tel: (415) 276-6500
Fax: (415) 276-6599

Attorneys for Defendant-Appellee
PROVIDENCE HEALTH SYSTEM - SOUTHERN CALIFORNIA
(erroneously sued as Providence Health and Services, Inc.)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Providence Health System—Southern California certifies that it is a California non-profit corporation, in which the sole member is Providence Health & Services, a Washington non-profit corporation.

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................1

II.    STATEMENT OF JURISDICTION ......................................4

III.   ISSUES PRESENTED ...........................................................6

IV.   STATEMENT OF THE CASE ..............................................6

     A.     Brief Overview of Medicare Secondary Payer Provisions ..................6

     B.     Plaintiff's Claims and This Lawsuit....................................10

     C.     Providence's Motion To Dismiss and the District Court's Order Granting the Motion ........................................................13

V.     SUMMARY OF ARGUMENT.............................................16

VI.   ARGUMENT.......................................................................19

     A.     Legal Standard.....................................................................19

     B.     The District Court Correctly Focused On and Held Plaintiff Failed to Exhaust Her Administrative Remedies and Is Thus Not Entitled to Judicial Review ........................................20

     C.     The District Court Properly Found This Case Arises Under the Medicare Act ..................................................................23

         1.     The Supreme Court's and Ninth Circuit's Test for Claims Arising Under the Medicare Act ..................................24

         2.     Plaintiff's Claims Arise Under Medicare Because They Are Inextricably Intertwined with Medicare Benefits ...........25

         3.     Plaintiff's Claims Arise Under Medicare Because Her Standing and the Substantive Basis of Her Claims Derive From the Medicare Act .....................................28

D.      Plaintiff Is Incorrect That the Exhaustion Requirement of 42 U.S.C. § 405(h) Does Not Apply to a "Lawsuit Against a Private Medicare Provider" or That the Other Provisions of 42 U.S.C. § 405(g) and (h) Do Not Apply ................................................29

E.      The District Court Correctly Found that Plaintiff Had Administrative Processes Available Through Which She Might Have Sought Review of Her Complaints ...........................................34

        1.      Plaintiff Could Have Availed Herself of the Informal and Formal MSP Appeal Process .............................37

        2.      Plaintiff Could Request a Reopening of the June 2013 MSP Initial Determination................................40

        3.      Plaintiff Could Have Filed a Complaint with CMS.................42

        4.      The District Court's Order Did Not Rely on a Finding That There Was an Initial Determination On The March and April 2012 Claims for Providence's Services ...............................................43

        5.      The SMART Act's Provisions Applicable to Plaintiff's Claims Were In Effect ...............................................44

F.      CMS Has Been Entrusted With Oversight Over Alleged Violations of Medicare Standards ......................................................46

VII.     CONCLUSION..............................................................................50

**Cases**

*Acquisto v. Secure Horizons by United Healthcare Ins. Co.*,
  No. 2:08cv847, 2011 WL 6780870 (M.D.Fla. Dec. 27, 2011), aff'd
  in part, 504 Fed.Appx. 855 (11th Cir. 2013) ....................................31

*Astra USA, Inc. v. Santa Clara County, California*,
  563 U.S. 110 (2011)....................................................................19, 48

*Barboza v. Cal. Ass'n of Prof'l Firefighters*,
  651 F.3d 1073 (9th Cir. 2011) ...........................................................5

*Bentley v. The Wellpoint Cos.*,
  No. 11 Civ. 8963, 2012 WL 546991 (S.D.N.Y. Feb. 17, 2012)........31

*Bettwieser v. Lucas*,
  364 Fed. Appx. 392 (9th Cir. 2010)....................................................5

*Heckler v. Ringer*,
  466 U.S. 602 (1984)..............................................................*passim*

*Kaiser v. Blue Cross of California*,
  347 F.3d 1107 (9th Cir. 2003) .................................................*passim*

*Kaye v. Humana Ins. Co.*,
  No. 08–80819–CIV, 2009 WL 455438 (S.D. Fla. Feb. 23, 2009) ..............23, 32

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .........................................................20

*Maa v. Ostroff*,
  No. 12-cv-00200-JCS, 2013 WL 5755043 (N.D. Cal. Oct. 23,
  2013) ..................................................................................................8

*Masey v. Humana, Inc.*,
  2007 WL 2363077 (M.D. Fla. Aug. 16, 2007)..................................23

*New York City Health and Hospitals Corp. v. Wellcare of New York,
  Inc.*,
  801 F.Supp.2d 126 (S.D.N.Y. 2011) ....................................38, 42, 49

*Palomar Medical Center v. Sebelius*,
    693 F.3d 1151 (9th Cir. 2012) ..............................................................46

*Phillips v. Kaiser Found. Health Plan, Inc.*,
    953 F. Supp. 2d 1078 (N.D. Cal. 2011).................................................22

*Rattlesnake Coalition v. United States EPA*,
    509 F.3d 1095 (9th Cir. 2007) ..............................................................20

*S. Cent. Reg'l Med. Ctr. v. Press Ganey Associates, Inc.*,
    923 F. Supp. 2d 897 (S.D. Miss. 2013) .........................................18, 31

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000)...........................................................................22, 38

*Sunshine Haven Nursing Operations LLC v. United States*
    *Department of Health and Human Services, Centers for Medicare*
    *& Medicaid Services*,
    742 F.3d 1239 (10th Cir. 2014) ............................................................46

*Uhm v. Humana, Inc.*,
    620 F.3d 1134 (9th Cir. 2010) ......................................................*passim*

*United States ex rel. Modglin v. DJO Global Inc.*,
    48 F. Supp. 3d 1362, 1384 (C.D. Cal. 2014) .........................................8

**Statutes**

28 U.S.C.
    § 1291...................................................................................................5
    § 1331............................................................................................4, 12

42 U.S.C.

§ 405(g) ................................................................................*passim*

§ 405(h) ................................................................................*passim*

§ 1395cc ..............................................................................27

§ 1395cc(b)(2)(A) ..............................................................15, 34

§ 1395ii ...............................................................................21

§ 1395y ...............................................................................15

§ 1395y(b) ...........................................................................*passim*

§ 1395y(b)(2) ......................................................................2, 7, 43, 44, 45

§ 1395y(b)(2)(B)(ii) ...........................................................10, 37

§ 1395y(b)(2)(A)(ii) ..........................................................2, 7

§ 1395y(b)(2)(B)(vii) .........................................................10, 37, 44

§ 1395y(b)(2)(B)(vii)(IV) ..................................................40, 45, 46

§ 1395y(b)(6) ......................................................................7

Omnibus Budget Reconciliation Act of 1980
    Pub. L. No. 96499, 94 Stat. 2599 (1980) ...........................7

The Public Health Services Act § 340B ................................49

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................4, 20

**Regulations**

42 C.F.R.

Chapter IV ........................................................................................47
§ 405.900............................................................................................39
§ 405.904(a)(1) and (a)(2) ................................................................39
§ 405.924(b)(12) ...............................................................................40
§ 405.980............................................................................................40
§ 405.980(a) .......................................................................................41
§ 405.980(c) .......................................................................................41
§ 405.986............................................................................................41
§ 405.986(a) .......................................................................................41
§ 411.20..............................................................................................35
§ 411.22-28 ........................................................................................36
§ 411.31...........................................................................................2, 36
§ 411.39(b)(1) ....................................................................................37
§ 422.108............................................................................................36
§ 488.3................................................................................................46
§ 488.26(b) and (c) ...........................................................................47
§ 488.28..............................................................................................48
§ 489.1(a)(2) and (3) .........................................................................47
§ 489.10..............................................................................................46
§ 489.11(a) .........................................................................................46
§ 489.20(f)-(g).....................................................................................8
§ 489.53..............................................................................................47
§ 489.53(a)(1) ....................................................................................47
§ 489.53(e) .........................................................................................47

78 Fed. Reg. 57800-01, 2013 WL 5276524 (Sept. 20, 2013)...................................44

## I.    INTRODUCTION

This appeal presents another example of what so frustrated Circuit Judge B. Fletcher when she wrote her concurrence in *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1158 (9th Cir. 2010) ("*Uhm*").  Rather than apply "[a] bit of common sense and attention to the available administrative remedies…" (*id.*) Plaintiff-Appellant Renate Morales ("Plaintiff") and her counsel continue to expend precious judicial resources on a fruitless appeal in hopes of breathing life back into their class action.

Fundamentally misunderstanding the secondary payer liability laws under Medicare, Plaintiff brought this putative class action purportedly to recover Medicare benefits she contends Defendant-Appellee Providence Health System— Southern California[1] ("Providence") improperly prevented her from receiving. Specifically, Plaintiff alleges Providence and co-defendant Hunter Donaldson LLC[2] violated Medicare law by obtaining hospital liens on the settlement proceeds that Plaintiff received in a tort action against the third party that Plaintiff identified

---

[1] As Providence pointed out in the District Court, while Plaintiff actually named "Providence Health and Services, Inc." as a defendant, there is no such entity and Providence appeared on behalf of the correct defendant Providence Health System – Southern California.  Doc. 1, p. 1, n.1.

[2] Although Hunter Donaldson LLC was served with the complaint, it did not appear in the action and is not a party to this appeal.

to be responsible for her injuries, rather than billing and accepting payment from Medicare for the care for the injuries caused by that third party.

Providence moved to dismiss on a number of substantive grounds, including that under the Medicare Secondary Payer ("MSP") rules, not only do Defendants have the right to obtain liens against Plaintiff's settlement proceeds, but Medicare may not, except on a conditional and purely discretionary basis, make a payment on behalf of a beneficiary while there exists another source from which payment may be obtained. In fact, Providence acted at all times in accordance with the MSP rules, which permit a provider willing to take a risk to seek payment of its full charges directly from the liable third party or indirectly out of its settlement with the Medicare beneficiary. *See* 42 C.F.R. § 411.31. Further, Medicare is precluded from paying for a beneficiary's medical expenses when payment "has been made or can reasonably be expected to be made under a Workers' Compensation plan, an automobile or <u>liability insurance plan</u> (<u>including a self-insured plan</u>) or under no fault insurance." *See* 42 U.S.C. § 1395y(b)(2) and (b)(2)(A)(ii) (emphasis added). In short, Plaintiff was not entitled to Medicare payment for the claims at issue.

Providence also moved to dismiss on the grounds that the District Court lacked subject matter jurisdiction because Plaintiff failed to exhaust her administrative remedies with the federal body responsible for administering the

Medicare program, the Secretary of the Department of Health and Human Services
(the "HHS Secretary" or "HHS"), acting through the Centers for Medicare &
Medicaid Services ("CMS"). In granting Providence's motion, the District Court
appropriately focused on Providence's jurisdictional argument.

After hearing oral argument and requesting and receiving supplemental
briefing from both parties on the issue of availability of administrative remedies,
the District Court issued a reasoned opinion dismissing without prejudice
Plaintiff's claims for failure to exhaust her administrative remedies. Critically, the
District Court found that because Plaintiff's claims arose under the Medicare Act,
she was required to exhaust her administrative remedies before commencing a civil
action. The District Court also found that Plaintiff has not shown that there is no
administrative review that is available as to her claims. In doing so, the District
Court outlined two separate administrative review mechanisms available to
Plaintiff and explained the importance of administrative review to the HHS
Secretary and CMS.

On appeal, Plaintiff raises a number of unsupported arguments against
application of 42 U.S.C. § 405(g) and (h), the statutes mandating exhaustion of
administrative remedies. Importantly, however, Plaintiff does not dispute that her
claims arose under the Medicare Act, which, according to the Ninth Circuit in *Uhm*
is the "key inquiry in determining whether § 405(h) requires exhaustion…." 620

F.3d at 1141.  As the Ninth Circuit has made clear, if a claim arises under the Medicare Act, the Court "cannot exercise subject matter jurisdiction until those claims are properly exhausted."  *Id.*  A plaintiff **must** present the claim to the HHS Secretary or CMS to allow them weigh in and provide guidance.  Only once the claim has been presented and any administrative remedies have been exhausted (or waived by the federal body), may a party seek judicial review.  Plaintiff also asserts that she had no administrative remedies available throughout the pendency of this case.  Yet, as detailed below, Plaintiff had ample opportunities to raise her dispute with the HHS Secretary and CMS.

Because Plaintiff's claims arise under Medicare and she had available means to exhaust her administrative remedies, should the Court elect to accept jurisdiction over this appeal, the Court should affirm the District Court's dismissal without prejudice.

## II.    STATEMENT OF JURISDICTION

On December 14, 2015, the District Court ruled that because Plaintiff's claims are merely disguised claims for benefits, which arise under the Medicare Act, it had original jurisdiction over her claims pursuant to 28 U.S.C. § 1331.  ER 4-7.  The District Court also granted Providence's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies,

without prejudice "to Plaintiff pursuing appropriate administrative remedies and potential judicial review of any adverse rulings."  ER 11.

Plaintiff now seeks to invoke this Court's jurisdiction, contending that the District Court's dismissal without prejudice was a final appealable order under 28 U.S.C. § 1291.  Yet Plaintiff herself explains, "[w]hen a district court terminates an action for a claimant's failure to exhaust administrative remedies, [the Court] will treat the matter as final ***unless the claimant could begin anew or continue the administrative process***."  *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) (emphasis added).  The Ninth Circuit has declined to accept jurisdiction over appeals in cases where the District Court dismissed an action for failure to exhaust administrative remedies.  *See, e.g.*, *Bettwieser v. Lucas*, 364 Fed. Appx. 392, 393 (9th Cir. 2010) (dismissing appeal for lack of jurisdiction where appellant had "not demonstrated that he did not receive a genuine opportunity for adequate relief, that he would suffer irreparable injury without immediate judicial relief, that an administrative appeal would be futile, [or] raised a substantial constitutional question").

For the reasons set forth below, Plaintiff is mistaken in her contention that: (1) there was "*never* any administrative process available to [her] to assert her claims against Providence," and (2) "even if there were, it would now be too late for Morales" "to begin the administrative process again or somehow continue it."

Br. at 3 (emphasis in original, citations and quotations omitted). As documented in the record and the discussion below, Plaintiff has had access to administrative remedies since the time of her purported injury, and she still has them today. Her persistent refusal to seek administrative relief is not a proper basis for appellate jurisdiction. Accordingly, this Court should decline to accept jurisdiction over this appeal.

## III.    ISSUES PRESENTED

Did the District Court correctly dismiss this action without prejudice for Plaintiff's failure to present her claims to the appropriate administrative body and exhaust her administrative remedies?

## IV.    STATEMENT OF THE CASE

Plaintiff's conduct both before and since filing suit illustrates that she has consciously avoided pursuing her available administrative remedies for the claims at issue at all costs – choosing instead to pursue her claims through this purported class action. As illustrated below, Plaintiff has had ample opportunities to raise her claims through the appropriate Medicare agency channels.

### A.    Brief Overview of Medicare Secondary Payer Provisions

Before addressing Plaintiff's claims, a brief overview of Medicare and the MSP requirements and provisions that apply here is helpful.

Medicare is a federal program created to provide health care to the elderly and disabled. While Medicare often is the primary payer for services received

by a Medicare beneficiary, there are numerous situations in which Medicare is not the primary payer. Key to this case, since 1980, federal law has mandated that Medicare be treated as a *secondary* rather than a primary payer of a beneficiary's medical expenses where a third party tortfeasor having no-fault or liability insurance, including self-funded insurance or a Workers' Compensation program, is responsible. *See generally*, Omnibus Budget Reconciliation Act of 1980, Pub. L. No. 96499, 94 Stat. 2599 (1980). Indeed, Medicare is *precluded* from paying for a beneficiary's medical expenses when payment "has been made or can reasonably be expected to be made under a Workers' Compensation plan, an automobile or liability insurance plan (including a self-insured plan) or under no fault insurance." *See* 42 U.S.C. § 1395y(b)(2) and (b)(2)(A)(ii) (emphasis added). Accordingly, Medicare is not responsible for payment for items or services otherwise covered to the extent that payment has been made, or can reasonably be expected to be made, under a liability policy or plan. *See* 42 U.S.C. § 1395y(b)(2).

These MSP requirements are also imposed directly on Medicare-participating providers. For example, 42 U.S.C. § 1395y(b)(6) requires all entities seeking payment for services furnished under Medicare Part B to collect information from patients regarding the availability of other insurance. In addition, as a condition of their provider agreements with CMS, Medicare

participating hospitals are required to maintain a system as part of their admissions process to identify any primary payers other than Medicare, so that incorrect billing and Medicare overpayments can be prevented, and "[t]o bill other primary payers before Medicare." 42 C.F.R. § 489.20(f)-(g) (emphasis added).

Under certain circumstances, Medicare may make conditional payments if the liability insurance will not pay promptly. However, under Section 1395y(b), even then Medicare has a right to be reimbursed from the proceeds received pursuant to a third party liability settlement, award, judgment, or recovery – and that right exists as against "any entity, including beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment." *See* Doc.[3] 15-4 and 15-5 (Request for Judicial Notice, Ex. C, attaching MSP Manual, Ch. 2 [hereafter "MSP Manual"], at Section 40).[4] The

---

[3] All references to "Doc." refer to documents filed before the District Court that are not part of the Excerpts of Record.

[4] The MSP Manual is available in its entirety at http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019017.html. The MSP Manual was submitted to the District Court through a Request for Judicial Notice. Plaintiff did not oppose that request. This Court may similarly take judicial notice of this material. *See, e.g.*, *Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 WL 5755043, at *5 n.4 (N.D. Cal. Oct. 23, 2013) (taking judicial notice of manual on CMS website as a "publically filed document[]"); *United States ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1384 (C.D. Cal. 2014) (taking judicial notice of documents available on CMS and FDA websites because they "are available on the websites of

MSP Manual offers further guidance on the issue of liens, providing, in pertinent part:

*Generally, providers, physicians, and other suppliers must bill liability insurance prior to the expiration of the promptly period rather than bill Medicare. (The filing of an acceptable lien against a beneficiary's liability insurance settlement is considered billing the liability insurance.) Promptly means payment within 120 days after the earlier of: 1) the date the claim is filed with an insurer or a lien is filed against a potential liability settlement; or 2) the date the service was furnished or, in the case of inpatient hospital services, the date of discharge) rather than bill Medicare. Following expiration of the promptly period, or if demonstrated (e.g., a bill/claim that had been submitted but not paid) that liability insurance will not pay during the promptly period, a provider, physician, or other supplier may either:*

- ▪ *bill Medicare for payment and withdraw all claims/liens against the liability insurance/beneficiary's liability insurance settlement (liens may be maintained for services not covered by Medicare and for Medicare deductibles and coinsurance); or*

- ▪ *maintain all claims/liens against the liability insurance/beneficiary's liability insurance settlement.*

government agencies or a government contractor [and thus] are appropriate subjects of judicial notice").

*See* MSP Manual, Ch. 2, Section 40.2.B, Billing in MSP Liability Insurance Situations (emphasis added). This guidance is consistent with the language of the statute mandating that Medicare be a secondary payer where other payment is expected from a third party.

Under Section 1395y(b)(2)(B)(vii), the beneficiary, the liable third party or the plan primarily responsible for paying for the beneficiary's injuries is to notify the HHS Secretary that a payment is reasonably expected and the expected date of such payment and to repay any conditional payments by Medicare under Section 1395y(b)(2)(B)(ii).

### B. Plaintiff's Claims and This Lawsuit

Plaintiff alleges that at all material times she was "a Medicare recipient entitled to benefits under Medicare Part A and B." ER 23 ¶ 23. She further alleges that on December 12, 2011, she suffered a slip and fall injury requiring twenty sessions of physical therapy at a Providence facility. ER 23 ¶ 20. Providence billed Medicare and received payment for the first twelve sessions of physical therapy that she underwent in January and February 2012. ER 23 ¶ 24, 26 ¶ 45. On February 23, 2012, Plaintiff filed a tort claim against the third party she claimed was responsible for her injuries. ER 23 ¶ 30. Plaintiff alleged Medicare rejected the eight physical therapy sessions furnished in March and April 2012,

because of an unspecified clerical error, and **informed Plaintiff of such denials** prior to June 2012. ER 24 ¶¶ 25-27, 26 ¶ 45.

In October of 2012, Providence through co-defendant Hunter Donaldson LLC sent Plaintiff lien letters in the amounts of $5,616.00 and $1,872.00, based on Providence's customary charges for those last eight therapy sessions. ER 24 ¶¶ 28, 29. On June 20, 2013, Plaintiff received a demand letter from CMS requesting that she reimburse Medicare for the payments made to her for the January and February 2012 claims. *See* Plaintiff's Motion for Judicial Notice ("MFJN"), 9th Cir. Doc. 16, Ex. 2.[5]

Instead of challenging Medicare's denial of the March and April claims through available administrative channels and seeking payment from Medicare through appeals of the denied claims, Plaintiff waited three full years and filed a lawsuit in California state court against Providence. Plaintiff filed suit in Los

---

[5] Plaintiff requests that this Court take judicial notice of a copy of a demand letter sent to her from CMS on June 20, 2013. While the letter was not disclosed by Plaintiff to the District Court, Providence does not object to its consideration by this Court. While Providence takes no position whether the letter may be subject to judicial notice by this Court, Providence does disagree with Plaintiff's substantive arguments regarding the impact of the letter on this Court's jurisdiction and whether she had available administrative remedies. Providence also notes that, while it assumes Plaintiff has consented to the public filing of such information, the letter was submitted without redacting Plaintiff's personal home address, her Medicare beneficiary identification number (HICN) and diagnosis codes, making her more susceptible to identity theft. Providence would have no objection to the Court's sealing of this record, should Plaintiff subsequently request it.

Angeles Superior Court on April 29, 2015. ER 36. Plaintiff filed a first amended complaint in state court Los Angeles Superior Court on May 29, 2015. ER 18. On June 15, 2016, Providence removed the action to federal court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, on the grounds that all of Plaintiff's claims arose under the federal Medicare Act. ER 2, Doc. 1 (Providence's Notice of Removal). Plaintiff did not move to remand the action.

Plaintiff named as defendants Providence and Hunter Donaldson LLC (collectively "Defendants"). ER 18. Plaintiff alleged eight causes of action, all of which rely on the same underlying facts and are predicated on Providence's alleged failure to comply with the Medicare Act, including: (i) breach of Providence's provider agreement with the HHS ("Medicare Provider Agreement"); (ii) fraud; (iii) negligent misrepresentation; (iv) violation of California's Unfair Competition Law (the "UCL"); (v) violation of California's Consumer Legal Remedies Act (the "CLRA"); (vi) a claim for breach of the contract between Plaintiff and Providence, apparently mis-titled as a claim for breach of the covenant of good faith and fair dealing; (vii) breach of the covenant of good faith and fair dealing relating to that same contract; and (viii) declaratory and injunctive relief. ER 18, 25-35. Plaintiff asserted all her causes of action against Providence, but only her second, third, fourth and eighth causes of action against Hunter Donaldson LLC. *Id.*

### C.    Providence's Motion To Dismiss and the District Court's Order Granting the Motion

On July 6, 2015, Providence moved to dismiss Plaintiff's claims on a variety of grounds, including that the District Court lacked subject matter jurisdiction. ER 2. Plaintiff opposed the motion, but did not contest federal jurisdiction. ER 2-3. While that motion was pending, the District Court, *sua sponte*, issued an Order to Show Cause re Subject Matter Jurisdiction ("OSC") on September 30, 2015 (ER 15-16), to which both Plaintiff and Providence responded. Doc. 26 and 27.

On October 19, 2015, the Court heard oral argument on Providence's motion to dismiss and the OSC. ER 12-14. At the hearing, the Court requested, and subsequently issued a Minute Order directing that both parties submit supplemental briefing regarding the administrative process as it applies to this case. ER 12-14. Plaintiff and Providence timely submitted their supplemental briefs, and the Court took Providence's motion under submission. ER 3.

On December 14, 2015, the District Court issued the Order that is the subject of this appeal. ER 2-11. First, the District Court discharged the OSC re Jurisdiction, finding that Plaintiff's claims arose under the Medicare Act. ER 7. In doing so, the District Court rejected Plaintiff's argument that these claims do not "arise under" the Medicare Act because they do not concern recovery of wrongfully denied Medicare benefits, but Defendants' tortious interference with Plaintiff's right to obtain these benefits. ER 5. The District Court held, "[i]n

13

substance, her claims seek the recovery of improperly denied Medicare Benefits." ER 5.

In reaching its conclusion, the District Court expressly relied on the Ninth Circuit's holding in *Uhm* that "[o]ne category of claims that we and other courts have found to 'arise under' the [Medicare] Act are those cases that are cleverly concealed claims for benefits." ER 5, citing *Uhm*, 620 F.3d at 1141 (internal quotes omitted). The District Court noted that the Ninth Circuit's conclusion was based on the reasoning that "[plaintiffs] have not alleged that [defendant drug-plan provider] promised anything more than to abide by the requirements of the [Medicare] Act." ER 6, quoting *Uhm*, 620 F.3d at 1143.

The District Court found that same logic to apply to this case, holding the amended complaint "alleges no more than that [Providence was] required to comply with the Medicare Act, but failed to do so." ER 6. "[T]he only injury alleged by Plaintiff is the wrongful denial of Medicare benefits . . . . Had the bills at issue been submitted to Medicare with the corresponding benefits paid to Defendants, there would have been no basis for the claims that are asserted in this action." ER 7.

Having found Plaintiff's claims to arise under the Medicare Act, the District Court found that Plaintiff was required to exhaust available administrative remedies before commencing a civil action, and that she had specific

administrative review options available to her.  ER 7-9.  The District Court explained that Plaintiff could have challenged Medicare's denial of the disputed claims through two specifically identified mechanisms:  (1) the informal dispute resolution process, which is provided in 42 U.S.C. § 1395y, to contest the denial of the March and April claims; and (2) § 1395cc(b)(2)(A), which authorizes the HHS Secretary to terminate an agreement with a provider for failure to "comply substantially" with the terms of the provider agreement.  ER 8-9.

Finally, the District Court went on to highlight the importance of administrative review, particularly in instances where CMS has provided "extensive guidance" "on the precise issue that is in dispute in this action."  ER 10-11.  It held Plaintiff's "claims rest solely on a dispute over the proper interpretation of the MSP regulations," such that to "require [her] to present her position through the dispute resolution process provided by the MSP regulations is in accord with the foundation for administrative exhaustion."  ER 10.  The District Court concluded: "There are substantive administrative procedures through which Plaintiff can raise and have decided the issues disputed in this case.  Therefore, it is required and appropriate that CMS and [the HHS Secretary] be afforded the opportunity to interpret the MSP provisions and apply them to Plaintiff's claim to benefits."  ER 11.

The District Court dismissed Plaintiff's claims without prejudice to Plaintiff pursuing appropriate administrative remedies and potential review of any adverse rulings. ER 11. Plaintiff appealed the District Court's dismissal of her claims. ER 1.

## V.    SUMMARY OF ARGUMENT

After extensive briefing from both parties, the District Court, in a thorough reasoned opinion, correctly ruled that Plaintiff's claim arose under the Medicare Act, and thus Plaintiff was obligated to present her claim for benefits to the HHS Secretary and/or CMS and exhaust the available administrative remedies before commencing a civil action. Plaintiff does not contest the District Court's finding that her claims arise under the Medicare Act. She instead raises misplaced arguments regarding the statutory language found in 42 U.S.C. § 405(g) and (h) that have been expressly rejected by the Ninth Circuit, and would turn the basis for administrative appeal on its head by circumventing the input of the responsible administrative agency; here, CMS.

First, as illustrated in Sections VI.B. and C. below, the Ninth Circuit in *Uhm*, set out the definitive test to determine whether a claim must be administratively exhausted. As the Court held, the Medicare Act's "exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision 42 U.S.C. § 405(g), the 'sole avenue for judicial review' for claims '***arising under***

16

the Medicare Act." 620 F.3d at 1140, citing *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (emphasis added) (internal quotations omitted).

> "The key inquiry in determining whether § 405(h) requires exhaustion before we can exercise jurisdiction is whether the claim 'arises under' the Act…If so, we cannot exercise subject matter jurisdiction until those claims are properly exhausted."

*Id.* at 1141. Because, as the District Court in this case ruled, Plaintiff's claims arise under the Medicare Act, she was required to present her claims and exhaust administrative remedies before filing this action.

Plaintiff contends that the statutory exhaustion requirements of 42 U.S.C. § 405(g) and (h) do not apply to her claims because: (i) she has sued a private entity rather than bringing suit "against the United States, the [HHS] Secretary, or any officer or employee thereof . . ." (Br. at 13); and (ii) she is not seeking review of any decision by the HHS Secretary (Br. at 16-17). Plaintiff further argues that even if those provisions applied, she was not required to exhaust administrative remedies because she had none to exhaust. Plaintiff's arguments entirely miss the mark.

As set forth in Section VI.D. below, the Ninth Circuit explicitly rejected the first argument posited by Plaintiff. In *Uhm*, the Ninth Circuit held it does not

matter whether the party sued is a private party[6], or whether there are available administrative remedies against that party because "claims 'arising under' the [Medicare] Act must be brought before the [HHS] Secretary before judicial review can be sought." 620 F.3d at 1145. Other courts have similarly rejected Plaintiff's argument. *See, e.g.*, *S. Cent. Reg'l Med. Ctr. v. Press Ganey Associates, Inc.*, 923 F. Supp. 2d 897, 902 (S.D. Miss. 2013) (rejecting same argument made by a private entity that contracted with the plaintiff, not the government, to collect information to report to CMS and finding the "controlling issue" to be whether the claim "arises under" the Medicare Act).

The Ninth Circuit's holding in *Uhm* and Plaintiff's own allegations undercut Plaintiff's second argument. As the Ninth Circuit held, the key determination is whether Plaintiff's claims "arise under" the Medicare Act. If they do, Plaintiff was required to <u>first present them to the HHS Secretary or CMS</u>, and, second, exhaust all available administrative remedies. Plaintiff cannot fail to present her claims to the HHS Secretary and then claim there was no initial determination to appeal by virtue of her failure to present her claims.

Moreover, even if Plaintiff's reading of 42 U.S.C. § 405(g) and (h) were correct, the June 2013 demand letter Plaintiff received from CMS (*see* Plaintiff's

---

[6] Humana, Inc., the defendant in *Uhm*, was a private entity that did not act as a government contractor and was noted by the Ninth Circuit not to be a "Part D sponsor." 620 F.3d at 1144-45.

18

MFJN, 9th Cir. Doc. 16, Ex. 2) constitutes an initial determination. The letter explicitly sets out her appeal rights and routes for challenging that determination through the appropriate administrative process. Plaintiff could have, but apparently chose not to, raise the treatment of her March and April 2012 claims through that process.

Further, as illustrated in Section VI.E. below, Plaintiff had ample other administrative remedies available to her, had she (or her counsel) wished to pursue them. In short, as the District Court correctly held, "this is not a case where the application of § 405(h) 'would mean no review at all.'" ER 11.

Finally, as set forth in Section VI.F. below, claims of violations of Medicare standards, including violations of the Medicare Provider Agreement, the MSP program, or the Medicare Conditions of Participation, must be vetted initially through CMS's administrative procedures. The United States Supreme Court held in *Astra USA, Inc. v. Santa Clara County, California*, 563 U.S. 110 (2011), that enforcement of agreements akin to the Medicare Provider Agreement is entrusted to the HHS Secretary and not to private parties.

## VI. ARGUMENT

### A. Legal Standard

The parties agree that a dismissal for lack of subject matter jurisdiction, including a dismissal for failure to exhaust administrative remedies, is reviewed de

novo. *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111 (9th Cir. 2003).

A "facial" attack to jurisdiction is resolved the same way as a motion to dismiss

under Rule 12(b)(6): "Accepting the plaintiff's allegations as true and drawing all

reasonable inferences in the plaintiff's favor, the court determines whether the

allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite

v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted). Plaintiff, as

"the party asserting subject matter jurisdiction has the burden of proving its

existence." *Rattlesnake Coalition v. United States EPA*, 509 F.3d 1095, 1102 n.1

(9th Cir. 2007).

### B. The District Court Correctly Focused On and Held Plaintiff Failed to Exhaust Her Administrative Remedies and Is Thus Not Entitled to Judicial Review

The District Court properly held that "[b]ecause Plaintiff's claims arise

under the Medicare Act, she is required to exhaust the available administrative

remedies before commencing a civil action." ER 8; *see also Heckler*, 466 U.S. at

614. Plaintiff on appeal attempts to distract from this most critical conclusion that

compels her to exhaust administrative remedies by raising arguments that miss the

point entirely.

The Ninth Circuit in *Uhm* set out the definitive test for this Circuit to

determine whether a claimant must exhaust administrative remedies. As the Court

held there, the Medicare Act's "exhaustion requirement, 42 U.S.C. § 405(h), makes

judicial review under a related provision 42 U.S.C. § 405(g), the 'sole avenue for

judicial review' for claims '*arising under* the Medicare Act." 620 F.3d at 1140,

citing *Heckler*, 466 U.S. at 614-15 (emphasis added) (internal quotations omitted).[7]

Thus, the Court continued:

> "The key inquiry in determining whether § 405(h) requires exhaustion
> before we can exercise jurisdiction is whether the claim 'arises under'
> the Act….If so, we cannot exercise subject matter jurisdiction until
> those claims are properly exhausted."

*Id.* at 1141.

In *Heckler*, the seminal case addressing judicial review of Medicare claims,

the Supreme Court held that "the exhaustion requirement of [the Medicare Act]

consists of a *nonwaivable* requirement that a claim for benefits shall have been

presented to the Secretary [of Health and Human Services], and a waivable

requirement that the administrative remedies prescribed by the Secretary be fully

pursued by the claimant." *Id.* at 617 (internal citations and quotations omitted).

The Court concluded that "[j]udicial review of claims arising under the Medicare

Act is available only after the [HHS] Secretary renders a 'final decision' on the

---

[7] 42 U.S.C. § 405(h) (§ 205(h) of the Social Security Act), is made applicable to
the Medicare Act by 42 U.S.C. § 1395ii. Section 405(h) states: "The findings and
decisions of the [Secretary] after a hearing shall be binding upon all individuals
who were parties to the hearing. No . . . decision of the Secretary shall be
reviewed by any person, tribunal, or government agency except as herein provided.
. . ." 42 U.S.C. § 405(g), in turn, establishes the exclusive mechanism for judicial
review of claims arising under the Medicare Act, mandating that "[a]ny individual,
after any final decision of the [Secretary] made after a hearing to which he was a
party . . . may obtain a review of such decision by a civil action" in district court.

claim . . . ." *Id.* at 605 (citing 42 U.S.C. § 405(g)). Because the Medicare enrollee plaintiff's claim in *Heckler* was "essentially one requesting payment of benefits for [a] surgery," and because the plaintiff had "not given the [HHS] Secretary an opportunity to rule on a concrete claim for reimbursement," the Court dismissed the claim for lack of administrative exhaustion. *Id.* at 620-22.

Accordingly, the Medicare Act "demands the 'channeling' of virtually all legal attacks through the agency." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). This administrative exhaustion scheme "clearly appl[ies] in a typical . . . Medicare benefits case, where an individual seeks a monetary benefit" that the individual contends was unlawfully denied. *Id.* at 10.

It does not matter whether a plaintiff's claim is expressly predicated on the Medicare Act or is based on potentially unrelated state law causes of action. As long as the claim is "inextricably intertwined" with a claim for benefits under the Act, it is subject to administrative exhaustion. *See, e.g.*, *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1089 (N.D. Cal. 2011) ("To the extent Plaintiff is claiming that Kaiser is running afoul of the Medicare Act by collecting reimbursement from her in an amount greater than what is permitted under the Act she is making a claim for benefits and must exhaust that claim. It does not matter that she is using state law as the vehicle to press her assertion.") (citing *Heckler*,

466 U.S. at 618, and dismissing California UCL and CLRA claims for failure to exhaust).[8]

## C. The District Court Properly Found This Case Arises Under the Medicare Act

As the District Court correctly recognized, this is a Medicare case. ER 4-7. Although Plaintiff alleges only state law causes of action, both the grounds for relief and the relief expressly sought pertain solely to the alleged interference with and recovery of Medicare benefits.

In every phase of this case, from her Complaint to her Opening Appeal Brief, Plaintiff has repeatedly stressed her "entitlement to Medicare" benefits, which she alleges has been impaired by Providence's conduct in violation of federal Medicare law. *See* ER 5, 20 ¶ 10, 25 ¶ 37, 26 ¶¶ 46-47; Br. at 1-2, 4-5, 7, 10, 12, 19. As a result, the resolution of Plaintiff's claims requires an interpretation of the Medicare Act, its implementing regulations, and CMS guidance to determine whether Plaintiff is, in fact, "entitled" to the benefits claimed, as well as whether Medicare permits Providence to seek reimbursement from third party tortfeasors.

---

[8] *See also Kaye v. Humana Ins. Co.*, No. 08–80819–CIV, 2009 WL 455438, at *7-9 (S.D. Fla. Feb. 23, 2009) (dismissing breach of contract and fraud claims for failure to exhaust); *Masey v. Humana, Inc.*, 2007 WL 2363077, at *4-11 (M.D. Fla. Aug. 16, 2007) (dismissing breach of contract and third-party beneficiary claims for failure to exhaust).

The District Court agreed. "In substance," it held, Plaintiff's "claims seek the recovery of improperly denied Medicare Benefits." ER 5. And the amended complaint "alleges no more than that [Providence was] required to comply with the Medicare Act, but failed to do so." ER 6. "[T]he only injury alleged by Plaintiff is the wrongful denial of Medicare benefits . . . . Had the bills at issue been submitted to Medicare with the corresponding benefits paid to Defendants, there would have been no basis for the claims that are asserted in this action." ER 7.

### 1. The Supreme Court's and Ninth Circuit's Test for Claims Arising Under the Medicare Act

The Supreme Court and Ninth Circuit use two tests to determine whether state law causes of action "arise under" Medicare and thereby confer federal question subject matter jurisdiction: (1) whether the claims are "inextricably intertwined" with Medicare benefits, and (2) whether both the standing and substantive basis for the presentation of the claims is the Medicare Act. *Uhm*, 620 F.3d at 1141(quoting *Heckler*, 466 U.S. at 614-15). *See also Kaiser*, 347 F.3d at 1112-13.

As the District Court held, and as explained in detail below, Plaintiff's claims "arise under" Medicare pursuant to either test. *See* ER 7 ("Plaintiff's claims are inextricably intertwined with a Medicare benefits determination. The Medicare Act provides the entire substantive basis for all of the asserted claims. Therefore,

Plaintiff's claims are merely disguised claims for benefits, which arise under the Medicare Act.")

### 2. Plaintiff's Claims Arise Under Medicare Because They Are Inextricably Intertwined with Medicare Benefits

"[C]ourts have considered numerous cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare." *Kaiser*, 347 F.3d at 1112. Suits for damages may arise under Medicare even though the Medicare Act does not provide for the award of damages. Similarly, claims for injunctive and declaratory relief may arise under the Medicare Act even though an actual award of benefits is not sought. Two major Ninth Circuit cases illustrate this point.

First, in *Uhm*, the Ninth Circuit addressed state breach of contract and tort claims against a Medicare provider in connection with the provider's allegedly improper failure to enroll the plaintiffs in a Medicare Part D prescription drug plan. Starting from the premise that "where, at bottom, a plaintiff is complaining about the denial of Medicare benefits . . . the claim 'arises under' the Medicare Act," the Court held that the plaintiffs' contract claim was a "backdoor attempt to enforce the Act's requirements and to secure a remedy for Humana's alleged failure to provide benefits." 620 F.3d at 1142-43. The Court observed that "there is no claim that the alleged contract imposed upon Humana any duties above and beyond compliance with the Act itself." *Id.* at 1143. It further explained that the

plaintiffs had not alleged "any injury that could not be remedied through the retroactive payment of Medicare drug benefits." *Id.* at 1144. Accordingly, the Ninth Circuit dismissed the plaintiff's claims for failure to exhaust administrative remedies.

Second, in *Kaiser*, a Medicare provider sued Blue Cross, in its role as a Medicare fiscal intermediary, when Blue Cross ceased making payments due to prior overpayments. 347 F.3d at 1109. The Ninth Circuit held various state law claims, including contract claims, were "inextricably intertwined" with a claim for Medicare reimbursements, explaining that those claims dealt with the appropriateness under federal law of "the compensation [the plaintiff] should have received for the services it provided to Medicare beneficiaries." *Id.* at 1114*; see also id.* at 1116 (affirming dismissal of state claims for failure to exhaust Medicare administrative review).

These cases make clear that where state claims are based on a party's alleged failure to adhere to the Medicare Act, they arise under the Medicare Act, regardless of the way the state claims are formulated and regardless of the remedy sought.

As the District Court exhaustively listed in reaching its conclusion, the premise for each of Plaintiff's substantive causes of action is the contention that Defendants violated the Medicare Act by billing Plaintiff, rather than Medicare, for the services at issue:

> "The basis for each cause of action is: (i) Defendants were barred by
> 42 U.S.C. § 1395cc from charging Plaintiff for any services for which
> she was entitled to have Medicare pay; (ii) Plaintiff was entitled to
> have the charges for the physical therapy appointments provided by
> Providence paid by Medicare; and, therefore, (iii) Defendants violated
> the Medicare Act both by refusing to submit Plaintiff's bills to
> Medicare and then placing liens on Plaintiff's settlement proceeds
> with respect to those bills."

ER 5.  Further, the District Court noted as relief for the asserted claims, the

amended complaint requests:

> "(i) a judicial declaration of Plaintiff's rights under the Medicare Act
> with respect to Defendants' lien and Plaintiff's obligation to pay
> Defendants; (ii) a permanent injunction that would bar Defendants --
> when presented with the same circumstances as those alleged here --
> from placing liens and collecting payments as they sought to do here;
> (iii) restitution and/or disgorgement of all sums collected by
> Defendants from such personal injury judgments or settlements; (iv)
> an order voiding the present liens; and (v) compensatory and punitive
> damages, prejudgment interest and attorney's fees."

*Id.*

Rejecting Plaintiff's argument that these claims do not "arise under" the

Medicare Act because they do not concern recovery of wrongfully denied

Medicare benefits, but Defendants' tortious interference with Plaintiff's right to

obtain these benefits, the District Court held, "[i]n substance, her claims seek the

recovery of improperly denied Medicare Benefits."  ER 5.  Thus, Plaintiff's

amended complaint alleges no more than that Defendants were required to comply

with the Medicare Act, but failed to do so.  ER 6.  That the amended complaint

"does not specifically seek Medicare benefits as a remedy is not determinative of whether its claim claims are disguised demands for the payment of benefits." *Id.*

Each of these issues is inextricably intertwined with a Medicare benefits determination for there can be no resolution of the one without the other.

### 3. Plaintiff's Claims Arise Under Medicare Because Her Standing and the Substantive Basis of Her Claims Derive From the Medicare Act

The Supreme Court's second test is readily satisfied as well. Clearly, the standing of Plaintiff to assert these claims is her status as a Medicare beneficiary. (ER 20 ¶ 10 and 23 ¶ 23.) And as demonstrated above, the entire substantive basis for these claims is the Medicare Act. Therefore, concluding that the amended complaint "arises under" the Medicare Act is wholly consistent with the tests articulated by the Supreme Court and the holdings of *Kaiser* and *Uhm*. Each of those cases found that state claims were "inextricably intertwined" with claims for Medicare benefits or reimbursements.

As in *Kaiser*, where the federal claim was based on the appropriateness of the reimbursements the plaintiff "should have received for the services it provided to Medicare beneficiaries," 347 F.3d at 1114, Plaintiff's claims here are based on whether Medicare should have been the primary payer for services provided by Providence. As in *Uhm*, Plaintiff here does not "allege any injury that could not be remedied through the retroactive payment of Medicare" benefits. 620 F.3d at

28

1144. Extinguishment of Providence's claim for payment under applicable Medicare provisions would, under Plaintiff's theory, restore to her the settlement funds to which she has allegedly been unlawfully denied access.

Finally, also as in *Uhm*, there is no claim in this case that Providence breached any "duties above and beyond compliance with the [Medicare] Act itself." *See Uhm*, 620 F.3d at 1143.

### D. Plaintiff Is Incorrect That the Exhaustion Requirement of 42 U.S.C. § 405(h) Does Not Apply to a "Lawsuit Against a Private Medicare Provider" or That the Other Provisions of 42 U.S.C. § 405(g) and (h) Do Not Apply

As noted above, on appeal, Plaintiff does not actually contend that this case does not "arise under" the Medicare Act. She instead contends: (i) that the statutory exhaustion requirement of 42 U.S.C. § 405(h) does not apply to this case because she has sued a private entity rather than "the United States, the Secretary [of Health & Human Services], or any officer or employee thereof . . . "; and (ii) that the other provisions of section 405(g) and (h) do not apply because Plaintiff is not seeking review of any "finding or decision made by the [HHS] Secretary." Br. at 13-17. But Plaintiff is wrong and is attempting to perform an end-run on the presentment and exhaustion requirements.

As an initial matter, Plaintiff's analysis would turn the entire test for exhaustion of administrative remedies on its head. As the Ninth Circuit unambiguously stated in *Uhm*, the test for whether a claim is subject to

administrative exhaustion is whether it "arises under" the Medicare Act.  620 F.3d

at 1140.  Any claim that arises under the Medicare Act must first be channeled

through the appropriate CMS procedures.  *Id.*  The requirement that a Medicare

claim be presented to the HHS Secretary is ***nonwaivable***.  *See id.*  This only makes

sense because the agency is the one that administers the program and should make

decisions related to claims under the Medicare Act.  Failure to present deprives

CMS of its ability to provide its federally mandated guidance on issues related to

the Medicare Act and to administer the Medicare program in a uniform manner.

Because, as shown above, Plaintiff's claims arise under Medicare, she was

required to first present her claim to the HHS Secretary or CMS prior to filing suit.

This requirement of presentment for any claim arising under the Medicare Act

applies regardless whether the party is a public or private entity, and whether

plaintiff is seeking review of a finding or decision by the HHS Secretary.  *Id.* at

1144-45.

The Ninth Circuit in *Uhm* was presented with and rejected this same

argument.  In considering the plaintiff's argument that Section 405(h) did not bar

claims against Humana, Inc., a private party which was the parent company of

Humana Health Plan, Inc., the Medicare Advantage sponsor, the Ninth Circuit

reaffirmed that the key determination is whether the claims arise under the

Medicare Act.  *Id.* at 1144.  "That they have also brought those claims against a

non-Part D sponsor does not change the conclusion that those claims 'arise under' the Act." *Id.* "Despite the fact that administrative remedies may not be available against Humana, Inc., claims 'arising under' the Act must be brought before the [HHS] Secretary before judicial review can be sought." *Id.* at 1145. Thus, the Ninth Circuit held the Uhms "cannot circumvent § 405(h)'s requirements by suing Humana, Inc." because to allow otherwise would "'defeat the purposes of' the Act's exhaustion requirement." *Id.*

Other courts have rejected this same argument. In *South Central Regional Medical Center v. Press Ganey Associates, Inc.*, 923 F. Supp. 2d 897, 899, 902 (S.D. Miss. 2013), the district court for the Southern District of Mississippi rejected the same argument made by a private entity third party contractor that contracted with the plaintiff, a community hospital, to collect information from the plaintiff's patients to report to CMS. In doing so, the court noted that "[s]everal courts have found § 405(h)'s exhaustion requirement applicable in suits brought against private parties." *Id.* at 902, citing to *Bentley v. The Wellpoint Cos.*, No. 11 Civ. 8963, 2012 WL 546991, at *1, *6 (S.D.N.Y. Feb. 17, 2012) (dismissing claims against private contractor and its parent company for failure to exhaust administrative remedies because claims arose under Medicare Act); *Acquisto v. Secure Horizons by United Healthcare Ins. Co.*, No. 2:08cv847, 2011 WL 6780870, at *1, *6 (M.D.Fla. Dec. 27, 2011), aff'd in part, 504 Fed.Appx. 855

(11th Cir. 2013) (dismissing claim against private organization that sponsors Medicare Advantage plans); and *Kaye v. Humana Ins. Co.*, 2009 WL 455438, at *8–9. The court went on to note that, although "some of the private party defendants in those suits had contracts with CMS relating to the administration of Medicare benefits, no defendant was 'the United States, the [HHS] Secretary, or any officer or employee thereof.'" *Id.* Thus, the court found the private entity status of a defendant not to be outcome determinative. Instead, the "***controlling issue*** is whether any claim asserted by South Central 'arises under the [Medicare] Act....'" *Id.*, citing to *Heckler*, 466 U.S. at 615 (emphasis added).

Similarly unavailing is Plaintiff's argument that 42 U.S.C. § 405(g) and (h) do not apply because she is not seeking judicial review of any finding or decision by the HHS Secretary. Br. at 16-17. This is nothing more than a restatement of Plaintiff's prior argument that her claims do not "arise under" the Medicare Act, which was rejected by the District Court. ER 5-7

As noted by the District Court, the Ninth Circuit held in *Uhm* that "[o]ne category of claims that we and other courts have found to 'arise under' the [Medicare] Act are those cases that are cleverly concealed claims for benefits." *Id.*, citing *Uhm*, 620 F.3d at 1141. The District Court noted that Ninth Circuit's conclusion was based on the reasoning that "[plaintiffs] have not alleged that

[defendant drug-plan provider] promised anything more than to abide by the requirements of the [Medicare] Act."  ER 6, quoting *Uhm*, 620 F.3d at 1143.

The District Court found that same logic to apply to this case, holding the amended complaint "alleges no more than that [Providence was] required to comply with the Medicare Act, but failed to do so."  ER 6.  "[T]he only injury alleged by Plaintiff is the wrongful denial of Medicare benefits . . . . Had the bills at issue been submitted to Medicare with the corresponding benefits paid to Defendants, there would have been no basis for the claims that are asserted in this action."  ER 7.

Moreover, even if Plaintiff's reading of 42 U.S.C. § 405(g) and (h) were correct, the June 2013 demand letter Plaintiff received from CMS (*see* Plaintiff's MFJN, 9th Cir. Doc. 16, Ex. 2) constitutes an initial determination.  The letter explicitly sets out her appeal rights and routes for challenging that determination through the appropriate administrative process.  Plaintiff could have, but apparently chose not to, raise the treatment of her March and April 2012 claims through that process.

### E.    The District Court Correctly Found that Plaintiff Had Administrative Processes Available Through Which She Might Have Sought Review of Her Complaints

The District Court in this case identified various avenues through which

Plaintiff might have sought CMS's review of her alleged injuries, including: (1) the

informal dispute resolution process, which is provided in 42 U.S.C. § 1395y(b), to

address the impact of her liability settlement on the MSP determination as to any

benefits to be payable by Medicare, including the impact of the denied March and

April claims; and (2) 42 U.S.C. § 1395cc(b)(2)(A), to complain of alleged

violations of the Medicare Provider Agreement, through which process the HHS

Secretary is authorized to terminate an agreement with a provider for failure to

"comply substantially" with the terms of the provider agreement.  ER 8-9.

Plaintiff's allegations in her amended complaint and the June 20, 2013 CMS

demand letter submitted through her Motion for Judicial Notice highlight that not

only did she have multiple points of access to CMS, but she had additional

administrative remedies available to her to obtain determinations as to what her

rights were as to both her liability settlement and Providence's liens.

Surprisingly, Plaintiff did not utilize any of these administrative avenues to

seek guidance or clarification from CMS (or any other administrative body),

despite alleging that she spoke with CMS regarding the rejected claims (ER 24 ¶¶

26 and 31).  Plaintiff knew at this time that Defendants had not resubmitted the

March and April claims since she alleged that she repeatedly demanded that Defendants resubmit the rejected claims to Medicare but the Defendants refused. *See id.* ¶¶ 27, 31, 45. Had she asked CMS, she could have avoided this entire suit because she would have learned that (1) the MSP rules prohibit Medicare from paying for services when, as in this case, there is a liable third party, (2) CMS expressly instructs providers that they have the option of filing a lien against a settlement with the liable third party, if the provider wants to take the risk of non-payment from the liable third party, in lieu of seeking a conditional Medicare payment (which is not done for the protection of the patient, but Medicare), and (3) the MSP regulations expressly authorize providers to bill full charges to Medicare beneficiaries where a third party is liable for the injuries in question. As the District Court concluded, the extensive nature of the guidance that HHS and CMS have issued on the very requirements that Plaintiff alleges Providence violated evidences that those agencies "have a strong interest in addressing the issues presented in this action through a pre-civil litigation administrative process." ER 11.

More specifically, the MSP program prohibits Medicare payment for services to the extent that payment has been made or can reasonably be expected to be made under any of the following: workers' compensation, liability insurance, or no-fault insurance. *See* 42 U.S.C. § 1395y(b); 42 C.F.R. § 411.20 *et seq*. The

MSP rules carve out an exception to that prohibition to permit a provider to submit claims to Medicare when there is evidence that the liable third party will not pay promptly within 120 days. These payments by CMS are discretionary and made solely on a conditional basis; the payments made by Medicare must be repaid to Medicare when the third party payment is available, *e.g.*, where a settlement, judgment, award, or other payment is secured. *See* 42 U.S.C. § 1395y(b); 42 C.F.R. § 411.22-28.

Moreover, the MSP rules expressly permit a provider willing to take a risk to seek and receive payment of its full charges directly from the liable third party or indirectly out of its settlement with the Medicare beneficiary.[9] *See* 42 C.F.R. § 411.31 entitled "Authority for providers to bill primary payers for full charges." This authorization for Medicare providers to bill full charges is available not only in the context of original Medicare (Part A and Part B) but also in the Medicare managed care context. *See* 42 C.F.R. § 422.108 ("Collecting from other entities. The MA organization may bill, or authorize a provider to bill, other individuals for covered Medicare services for which Medicare is not the primary payer….")

---

[9] In this case, Plaintiff alleges that Providence chose to assume that risk with regard to Plaintiff's March-April 2012 claims not paid by Medicare, and instead filed liens on Plaintiff's settlement in October 2012, several months before CMS issued its appealable MSP determination. ER 24 ¶¶ 28 and 29.

(emphasis added).  Therefore, as a matter of law, Plaintiff cannot state a claim that Defendants' alleged conduct violated the Medicare Act.

Plaintiff's arguments that administrative remedies were not available to her are inapposite and unavailing.

### 1. Plaintiff Could Have Availed Herself of the Informal and Formal MSP Appeal Process

The MSP statute requires Medicare beneficiaries to notify CMS of the expected settlement with any third parties and to repay any payments conditionally made by Medicare.  42 U.S.C. § 1395y(b)(2)(B)(ii) and (vii).  The MSP rules also require the Medicare beneficiary to participate in an administrative process overseen by the HHS Secretary to assure that the liability settlement provided by a third party covers the beneficiary's medical expenses rather than Medicare.  42 U.S.C. § 1395y(b)(2)(B)(vii).  To access this MSP process, a beneficiary must create an account through the MSP website, and notify CMS of any pending liability insurance settlement.  42 C.F.R. § 411.39(b)(i).  Thereafter, the beneficiary may use the informal MSP dispute resolution process, which is provided in 42 U.S.C. § 1395y(b), to contest the accuracy of CMS's identification of claims related to the injuries caused by the third party.

The District Court noted this informal process as one of the ways Plaintiff could have presented her claim.  In this regard, although unaware of the document

that the Plaintiff included in her Motion for Judicial Notice to this Court, the

District Court noted that Plaintiff:

> "'remain[s] free, [] after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends.  The fact that the agency might not provide a hearing for that particular contention, or may lack the power to provide one… is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency.'  *Shalala*, 529 U.S. at 23.  Thus, any procedural regulations that limit 'the extent to which the agency itself will provide the administrative review channel leading to judicial review' can be challenged in the judicial action following an initial presentment to the agency.  *Id.*"

ER 9.

Despite the informal nature of the MSP website process, even where a CMS

dispute process is voluntary and non-binding, such as the informal MSP process,

much less required as the MSP process is, "its existence alone suggests that

[Plaintiff's] breach of contract claim is barred," further emphasizing that CMS

clearly anticipated that MSP issues would go initially through the administrative

process.  *New York City Health and Hospitals Corp. v. Wellcare of New York, Inc.*,

801 F.Supp.2d 126, 139 (S.D.N.Y. 2011).

Plaintiff now requests judicial notice of the very document that demonstrates

her participation in that MSP determination process.  That document included an

initial determination by CMS dated June 20, 2013, that demanded repayment of

conditional Medicare payments paid by Medicare for services related to her injury

by a third party and notified Plaintiff that formal appeal rights were available. In particular, she could disagree with CMS's initial determination by appealing the MSP determination and raising her contentions therein that Defendants were: (1) required to resubmit the claims at issue in this matter, (2) prohibited from directly billing Plaintiff, and (3) prohibited from placing liens on her personal injury settlement. (*See* Plaintiff's MFJN, 9th Cir. Doc. 16, Ex. 2). Plaintiff had 120 days to file a formal appeal; that appeal process permitted her to submit "a letter explaining why [she] think[s] the amount [she] owe[s] Medicare is incorrect and/or any reason(s) why [she] disagree[s] with our determination." Plaintiff's MFJN, 9th Cir. Doc. 16, Ex. 2, at 4 of 7. [10]

Thus, Plaintiff, as the beneficiary, could also have availed herself of the formal multiple level administrative appeal process as to CMS's June 20, 2013 initial determination of MSP issues. *See* 42 C.F.R. Subpart I (42 C.F.R. § 405.900 et seq.). Whether Plaintiff's case is characterized as one seeking an entitlement to Medicare benefits or one regarding the improper treatment of a claim that Medicare should have paid, Plaintiff had access to the formal administrative appeal process, including review by an administrative law judge, the Departmental Appeals Board, and federal court. 42 C.F.R. § 405.904(a)(1) and (a)(2). Thus,

---

[10] We have no information as to whether Plaintiff in fact ever appealed this initial determination or otherwise sought CMS guidance as to Defendants' actions.

Plaintiff could have raised the very claims she raises in this lawsuit, namely whether the March and April claims should have been billed to and paid by Medicare and added to the recovery CMS's MSP determination, rather than subject her liability settlement to Providence's hospital liens. *See* 42 C.F.R. § 405.924(b)(12) ("If a…recovery…is appropriate:…[f]or a Medicare Secondary Payer recovery claim against a beneficiary or against a provider…."); (b)(13) (whether a claim is not payable under the MSP); and (b)(11) ("Any other issues having a present or potential effect on the amount of benefits to be paid under Part A or Part B of Medicare, including a determination of whether there was an underpayment of benefits paid under Part A or Part B, and if so, the amount thereof.")

These MSP formal appeal rights were in addition to the informal process at 42 U.S.C. § 1395y(b)(2)(B)(vii)(IV), through which she might have addressed her contention that CMS had not captured all of the services that might have been billed to Medicare for conditional payment, including the services included in Defendants' billing and lien actions.

## 2. Plaintiff Could Request a Reopening of the June 2013 MSP Initial Determination

In addition to the MSP formal appeal process, Plaintiff could request a reopening of the June 20, 2013 MSP initial determination under 42 C.F.R. § 405.980. Under that regulation, "[a] reopening is a remedial action taken to

change a binding determination or decision that resulted in either an overpayment or underpayment, even though the binding determination or decision may have been correct at the time it was made based on the evidence of record." 42 C.F.R. § 405.980(a). Because the June 20, 2013 CMS MSP determination is an initial determination, Section 405.980(c) permits Plaintiff to request a reopening: within 1 year from the date of the initial determination for any reason; within 4 years from the date of the initial determination for good cause as defined in Section 405.986; or at any time if the initial determination is unfavorable, in whole or in part, to the party thereto, but only for the purpose of correcting a clerical error on which that determination was based. Third party payer error does not constitute clerical error.

"Good cause" may be established (1) when there is new and material evidence that was not available or known at the time of the determination and may result in a different conclusion or (2) the evidence that was considered clearly shows on its face that an obvious error was made at the time of the determination or decision. 42 C.F.R. § 405.986(a). Per Plaintiff's allegations in the amended complaint, she was aware of the liens and Defendants' decision to bill the settlement proceeds directly during the one year period, and had the opportunity to request a reopening. Moreover, if she can show good cause, she has 4 years, through mid-June 2017 to request a reopening to surface her allegations as to Defendants' liens and direct billing. This is another example of a voluntary CMS

41

dispute process, the very existence of which bars Plaintiff's claims. *See New York City Health and Hospitals Corp.*, 801 F.Supp.2d at 139.

### 3. Plaintiff Could Have Filed a Complaint with CMS

In addition to the MSP process and a challenge to the MSP procedures, the District Court noted that Plaintiff could have filed a complaint with CMS as to whether Defendants violated the Medicare Act, including the Medicare Provider Agreement or Medicare Conditions of Participation. Under the CMS complaint investigation procedures, a complaint is defined as "an allegation of noncompliance with Federal and/or State requirements." *See* CMS State Operations Manual, Chapter 5 (Complaint Procedures), at Section 5010, attached as Exhibit C to Providence's Request for Judicial Notice ("Providence's RFJN"). CMS then would have investigated the complaint and determined if Defendants' acts violated the Medicare Provider Agreement. CMS, either on its own or through its agents, state survey agencies, is required to follow well defined investigation procedures when it receives complaints which involve Medicare providers. *See* Providence's RFJN, Ex. C, State Operations Manual, Chapter 5, (Complaint Procedures).

CMS, not the courts, therefore is the entity responsible for determining if the Medicare Act, including the Medicare Provider Agreement, is violated. For this reason, CMS has a robust administrative structure for such investigations, for

requiring corrective actions, and for the assessment of remedies, including fines, penalties, or even loss of the provider agreement. While the courts may hear provider appeals of the remedies imposed as a result of CMS's administrative process, the courts do not have the authority to supersede the CMS administrative appeal process to initially impose the remedies.

> **4.    The District Court's Order Did Not Rely on a Finding That There Was an Initial Determination On The March and April 2012 Claims for Providence's Services**

Plaintiff goes to lengths to explain that she could not have availed herself of the administrative appeals process because there was no "initial determination" made with respect to the initial claims in March and April 2012 for the services provided by Providence and which was purportedly rejected on the basis of a clerical error. *See* Br. at 18-19. Importantly, as discussed above, in finding that Plaintiff had available administrative remedies, the District Court did not rely on a finding that there was an "initial determination" made with respect to that claim. Instead, the District Court relied on the channels to present her claims to CMS and seek relief available through the 42 U.S.C. § 1395y(b)(2) MSP process and through the complaint investigation process administered by CMS.

Further, as discussed above, the June 20, 2013 letter constituted an appealable initial determination.

### 5. The SMART Act's Provisions Applicable to Plaintiff's Claims Were In Effect

Plaintiff's argument that she could not have availed herself of the SMART Act's informal dispute resolution process – found in 42 U.S.C. § 1395y(b)(2) – ignores the timing of the SMART Act's enactment. *See* Br. at 20-27. Plaintiff first asserts that she could not have raised the claims at issue through this dispute resolution process when they were first denied in 2012 because the SMART Act had not yet been implemented.

Providence does not dispute that the SMART Act was not enacted until January 2013, but that does nothing to explain why Plaintiff did not, and could not have submitted her claims after January 2013. All of the dispute resolution provisions the District Court relied upon in Section 1395y(b)(2)(B)(vii) were effective on January 10, 2013. Both the statute itself, Pub. L. 112-242, §201(b), and the September 2013 interim rule Plaintiff relies upon reference the effective date of the act. *See* 78 Fed. Reg. 57800-01, 2013 WL 5276524 (Sept. 20, 2013), found at https://www.federalregister.gov/articles/2013/09/20/2013-22934/medicare-program-obtaining-final-medicare-secondary-payer-conditional-payment-amounts-via-web-portal. Thus, ***Plaintiff's statutory right to follow that process existed before and when she received the June 2013 demand from CMS***, even if CMS was still working out its website. In addition, CMS's interim rule noted that they were expanding upon their existing website, which already allowed

44

for a means to dispute the amounts identified, in order to meet the new requirements. *Id.* In other words they were not for the first time creating the functionality in September 2013, they were simply expanding upon existing functionality.

Plaintiff also asserts that after receipt of her June 2013 demand letter from CMS, she could no longer dispute the claims set forth as conditional payment amounts. Br. at 25. But this again does nothing to explain why she could not have disputed those claims earlier or why she could not appeal the demand letter as an initial determination within the 120 day period. Plaintiff admittedly had the statutory right to address her claims through this informal dispute resolution process for *six months prior* to receiving the June 2013 demand letter.

Plaintiff next asserts that the informal dispute resolution process available through the SMART Act wasn't available to her because it does not allow her to request the addition of claims, only their removal. Br. at 25-26. Yet this runs directly counter to the express language found in the statute. As outlined in 42 U.S.C. § 1395y(b)(2)(B)(vii)(IV), if a beneficiary "believes there is a discrepancy with the statement of reimbursement amount," the beneficiary "must provide documentation explaining the discrepancy and a proposal to resolve such discrepancy." Within 11 business days after the date of receipt of such documentation, the HHS Secretary "shall determine whether there <u>is a reasonable</u>

basis to include or remove claims on the statement of reimbursement." 42 U.S.C.

§ 1395y(b)(2)(B)(vii)(IV) (emphasis added). The CMS website may not currently

provide a mechanism to input new claims, but Plaintiff does not explain why she

could not avail herself of other mechanisms to contact CMS, including via

telephone.

### F. CMS Has Been Entrusted With Oversight Over Alleged Violations of Medicare Standards

Under the Medicare statute, regulations, and agency guidelines, the HHS

Secretary administers and oversees the Medicare and Medicaid programs.

*Palomar Medical Center v. Sebelius*, 693 F.3d 1151, 1153 (9th Cir. 2012);

*Sunshine Haven Nursing Operations LLC v. United States Department of Health*

*and Human Services, Centers for Medicare & Medicaid Services*, 742 F.3d 1239,

1245 (10th Cir. 2014) ("CMS is charged with overseeing compliance with

Medicare's conditions of participation."). The HHS Secretary "has designated

CMS to administer the standard compliance aspects of these programs." *See*

Providence's RFJN, Ex. A, CMS State Operations Manual, Chapter 1 (Program

Background and Responsibilities), at Section 1000.

If a health care provider, such as a hospital, wishes to participate in the

Medicare program, it must be found by CMS to meet the Medicare standards found

in the conditions of participation and additional requirements in the Medicare

Provider Agreement. 42 C.F.R. §§ 489.10 and 489.11(a). *See also* 42 C.F.R.

§ 488.3.  Compliance is verified <u>by CMS</u> through surveys either by state agencies or approved accreditation bodies on CMS's behalf as to the Medicare standards and certification, including conditions of participation and the Medicare Provider Agreement, or through other agents of CMS.  *See* 42 C.F.R. Subchapter G at Part 482 (Medicare Conditions of Participation), Part 488 (Medicare provider survey, certification, and enforcement procedures), and Part 489 (Medicare Provider Agreement), including 42 C.F.R. § 489.1(a)(2) and (3).  When CMS uses state survey agencies, those agencies must use federal forms and procedures to ensure uniform and consistent application and interpretation of Federal requirements.  42 C.F.R. § 488.26(b) and (c).

Under 42 C.F.R. § 489.53, CMS may terminate a provider agreement under a variety of circumstances, including its determination that the provider is not complying with the Medicare Act and the regulations in 42 C.F.R. Chapter IV regarding CMS, including, among other matters, whether a provider complies with the Medicare provider agreement regulation (42 C.F.R. § 489.53(a)(1)).  A robust, structured administrative appeal process is provided to providers in the event that CMS makes such adverse determinations which, once administrative appeals are exhausted, may be challenged in the federal courts.  *See, e.g.*, 42 C.F.R. §§ 489.53(e); 498.5; Providence's RFJN, Ex. B, CMS State Operations Manual, Chapter 3 (Adverse Actions).  Even if CMS determines that deficiencies or

47

violations exist, it may still permit a provider to continue to participate where the provider submits an acceptable plan of correction to CMS. 42 C.F.R. § 488.28.

Thus, CMS, not Plaintiff, controls the process for assessing whether any non-compliances or violations exist, even when working through its agents, and determines what remedies or penalties, if any, should be imposed. Nothing in the Medicare regulations vests the right to determine if a provider has violated these standards, including those standards constituting the Medicare Provider Agreement, in entities other than in CMS or its agents. Nothing permits Plaintiff to deprive Providence of its right to have a CMS determination of the existence of a violation. Had Plaintiff complained to CMS of Providence's conduct in billing her for the services at issue in this case, CMS or its agents would have been required to investigate and make a determination as to whether the provider acted appropriately, or if corrective action was required.

In contrast, Plaintiff has no private right of action regarding the alleged breach by Providence of the Medicare Provider Agreement or the Medicare Act in general. *See, e.g., Astra USA, Inc. v. Santa Clara County, California*, 563 U.S. 110 (2011) (holding that a private cause of action by providers to enforce ceiling-price contracts between CMS and drug manufacturers under the 340B program administered by CMS were incompatible with the statutory regime, that such contracts were uniform agreements that simply recite the responsibilities imposed

by Section 340B of the Public Health Services Act on such manufacturers, that Congress placed the HHS Secretary in control of that program, and that such control could not be maintained if thousands of entities other than CMS could bring suits under those contracts as third party beneficiaries to such contracts). The Medicare Provider Agreement is just such a uniform CMS agreement that simply recites the statutory and regulatory responsibilities of Medicare providers and Plaintiff has no private cause of action on those points.

Moreover, where, as here, there is a robust CMS administrative process, to conclude that Congress intended a private right of action conflicting with the administrative process "would mean Congress had purposefully established an elaborate administrative procedure whose effectiveness Congress intended to be undermined willy-nilly through institution of private lawsuits." *New York City Health and Hospitals*, 801 F.Supp.2d at 139.

## VII.     CONCLUSION

The District Court applied the correct legal standard and properly ruled that Plaintiff failed to exhaust her administrative remedies prior to bringing this action. This Court should therefore affirm the District Court's Order dismissing this action without prejudice.


Dated:  July 21, 2016                    DAVIS WRIGHT TREMAINE LLP
                                         JOHN R. TATE
                                         KATHLEEN L. DRUMMY
                                         CAMILO ECHAVARRIA
                                         SEAN M. SULLIVAN
                                         JOHN D. FREED


                                         By  */s/Sean M. Sullivan*_____
                                         SEAN M. SULLIVAN

                                         Attorneys for Defendant-Appellee
                                         PROVIDENCE HEALTH SYSTEM -
                                         SOUTHERN CALIFORNIA
                                         (erroneously sued as Providence Health and
                                         Services, Inc.)

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because this brief utilizes a proportionately-spaced typeface, prepared using Microsoft Word in 14-point Times New Roman.

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,529 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

Dated: July 21, 2016                     DAVIS WRIGHT TREMAINE LLP
                                         JOHN R. TATE
                                         KATHLEEN L. DRUMMY
                                         CAMILO ECHAVARRIA
                                         SEAN M. SULLIVAN
                                         JOHN D. FREED


                                         By  */s/Sean M. Sullivan*
                                         SEAN M. SULLIVAN

                                         Attorneys for Defendant-Appellee
                                         PROVIDENCE HEALTH SYSTEM -
                                         SOUTHERN CALIFORNIA
                                         (erroneously sued as Providence Health and
                                         Services, Inc.)

## STATEMENT OF RELATED CASES

Defendant-Appellee Providence Health System—Southern California is not aware of any related cases currently pending before this Court within the definition of Ninth Circuit rule 28-2.6.

Dated:  July 21, 2016

DAVIS WRIGHT TREMAINE LLP
JOHN R. TATE
KATHLEEN L. DRUMMY
CAMILO ECHAVARRIA
SEAN M. SULLIVAN
JOHN D. FREED


By  */s/Sean M. Sullivan*
SEAN M. SULLIVAN

Attorneys for Defendant-Appellee
PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA
(erroneously sued as Providence Health and Services, Inc.)

| 9th Circuit Case Number(s) | 16-55072 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jul 21, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    s/Dee Keegan

*******************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)